UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | EP-17-CR-2664-KC |
| V. | ) | EP-17-CR-2660-KC |
| | ) | EP-17-CR-2661-KC |
| NATIVIDAD ZAVALA-ZAVALA | ) | EP-17-CR-2663-KC |
| BLANCA NIEVE VASQUEZ-HERNANDEZ | ) | EP-17-CR-2661-KC |
| ELBA LUZ DOMINGUEZ-PORTILLO | ) | |
| JOSE FRANCIS YANES-MANCIA | ) | |
| MAYNOR ALONSO CLAUDINO-LOPEZ | ) | |

## REPLY BRIEF OF PARENTS-APPELLANTS

Elba Luz Dominguez-Portillo, Natividad Zavala-Zavala, Jose Francis Yanes-Mancia, Blanca Nieve Vasquez-Hernandez and Maynor Alonso Claudino-Lopez (collectively referred to as "Parents-Appellants"), file their Reply Brief to the government's Response to Parents-Appellants' Brief in Support of Appeal.

The government makes several meritless arguments in its Response Brief to avoid addressing the Parents-Appellants' constitutional violations.

A. The government's meritless argument that constitutional claims are irrelevant to their petty misdemeanor convictions.

The government insists that the argument here should be about the misdemeanor convictions without talking about the illegal means it employed to obtain those misdemeanor convictions. However, the **sinister sophism** advanced by the government that the end justifies the employment of illegal means has been rejected by the Supreme Court and the Fifth Circuit. *Sugar Institute v. United*

1

*States,* 297 U.S. 553, 599 (1936); *Collins v. Beto,* 348 F.2d 823, 831 (5th Cir. 1965).

Contrary to the government's contention, the Parents-Appellants' constitutional

violations are relevant to their convictions.   This Court, like the Fifth Circuit, should

also take heed to the words of Justice Brandeis in *Olmstead v. United States,* 277 U.S.

438, 485 (1928):

> Our Government is the potent, the omnipresent teacher.   For good or for ill, it
> teaches the whole people by its example.   Crime is contagious.   If the
> Government becomes a lawbreaker, it breeds contempt for law; it invites every
> man to become a law unto himself; it invites anarchy.   To declare that in the
> administration of criminal justice **the end justifies the means**—to declare
> that the Government may commit crimes in order to secure the conviction of a
> private criminal—would bring terrible retribution.   Against the pernicious
> doctrine this Court should resolutely set its face.

*Id.*   In echoing Justice Brandeis' words, the Fifth Circuit observed:

> It is indisputably a policy of our society that criminals be speedily apprehended
> and justly convicted.   But in pursing this aim we must sedulously avoid
> prejudicing other, and higher, goals.   One such goal is certainly a cutting down
> on the incidence of unlawful conduct against private persons by public officials.
> . . .
> The public sector cannot wait for the private sector to take the initiative.   So
> far as the obligation fall to the lot of the federal courts to play a part they must
> not retreat from the duty of using the only means at their command to bring
> to an end unlawful arrests and other violations of fundamental rights.   This
> means is to set aside convictions, whether they be by state or federal courts,
> that are based on such denials on the part of public officials of the
> constitutional rights of the individual.

*Collins,* 348 F.2d at 831-32.   The violation of the Parents-Appellants' constitutional

rights warrants a reversal.   The government clearly used the underhanded tactic of

**family separation** to violate the Parents-Appellants' constitutional rights and

obtain their misdemeanor convictions.

*Interestingly,* the government does <u>not</u> dispute that these cases involve the separation of parents from their children.   As Magistrate Judge Torres noted, these types of § 1325 cases happen in his court "frequently."   <u>See</u> Transcript of Evidentiary Hearing/Motion to Dismiss at 34-36; Dkt. No. 41.[1]   Rather, the government seeks to justify its illegal action by arguing that the Parents-Appellants' convictions are required to avoid a "Disastrous Policy" and discourage "aliens to enter the United States with children to avoid prosecution, and thereby encourage the trafficking of children."   <u>See</u> Government's Response at pages 31 and 55.   However, as the Parents-Appellants pointed out in their Appellate Brief, this argument has been shot down by other federal courts.   <u>See</u> Appellants' Brief at page 35.   Most recently, in *MS. L. v. U.S. Immigration and Customs Enforcement, et al.,* 3:18-cv-00428-DMS-MDD, the government unsuccessfully asserted the same argument in the Southern District of California.   <u>See</u> Appellants' Brief at 33.

The real "Disastrous Policy" here would be to adopt the government's illegal views of: (1) stereotyping and profiling <u>all</u> indigenous people of color that come to the southern border with minor children as "traffickers of children" despite the fact that many are bona fide asylum seekers and making "credible fear claims," and (2) criminalizing the act of seeking asylum protections, which is against Congressional

---

1 Because all five cases are consolidated for appeal purposes, and because all documents and arguments are the same in each case, the cites to the record are to the documents on Ms. Vasquez-Hernandez's magistrate judge docket (17-MJ-4499-MAT).   This is done for purposes of clarity since identical documents may have different document numbers in each of the five magistrate judge dockets.

mandate that immigration officers "shall" refer individuals making a "credible fear claim" to asylum officers.   8 U.S.C. § 1225(b)(1)(A)(ii) & (B)(ii); 8 C.F.R. § 208.30(d). See Transcript of Evidentiary Hearing/Motion to Dismiss at 11-14; Dkt. No. 41 and Appellants' Brief at 18-24.   The government's practice of separating families to prevent the offense of "trafficking children" must pass constitutional scrutiny.

    B. The government's meritless argument that the Parents-Appellants are solely appealing the denial of their pretrial motions to dismiss.

The Parents-Appellants clearly stated in their notice of appeal that they are appealing their judgments of conviction and sentence.   This means that they are appealing all issues presented to Magistrate Judge Torres at both the pre-trial stage and at trial.

    C. The government's failure to address each of the constitutional claims made by the Parents-Appellants.

The Parents-Appellants present five (5) issues for appellate review.   And contrary to the government's assertion, the Parents-Appellants' appeal is not based on the "Flores Settlement" or "ICE's Parental Interests Directive."   See Government's Response at 53-54.   As the Parents-Appellants clearly stated in their Appellate Brief: "The Parents-Appellants cited to the Flores Settlement to illustrate Congress's intent regarding the family separation issue, i.e., to keep families together in immigration proceedings when immigration authorities detain accompanied minors."   See Appellants' Brief at 16.   The Parents-Appellants clearly stated in their Appellate Brief that they cited these documents *solely* to demonstrate that in

cases involving minors: "the family unit is of paramount concern to Congress." <u>Id.</u>

The Parents-Appellants' bases for their appeal are Constitutional Amendments, binding on <u>any</u> court in the United States.  It is that simple.  As stated in their Appellate Brief, the Parents-Appellants' claims are the following.  **First,** the government's mechanism of separating the Parents-Appellants from their minor children is a calculated measure that deprives the Parents-Appellants from obtaining a fair trial in violation of Due Process.  **Second,** the government's mechanism of separating the Parents-Appellants from their minor children is a coercive calculated measure that violates the Parents-Appellants' right against self-incrimination. **Third,** the government's mechanism of separating the Parents-Appellants from their minor children is a punishment that violates Due Process and the Eighth Amendment.  **Fourth,** the government's mechanism of separating the Parents-Appellants from their minor children is a coercive calculated measure that violates Brady and Due Process.  **Fifth,** the government's mechanism of separating the Parents-Appellants from their minor children to obtain the Parents-Appellants' petty misdemeanor convictions constitutes outrageous government conduct.

D. The government's meritless claim that some issues are reviewable under plain error.

The review of the Parents-Appellants' constitutional claims is *de novo*.  Period. From the beginning, the Parents-Appellants objected to the issue of family separation on constitutional grounds and presented the issues mentioned to Magistrate Torres for his consideration before they filed their timely notice of appeal.   There are <u>no</u> new

arguments presented to the district judge.    The record clearly demonstrates that the Parents-Appellants sought a fair and accurate resolution of <u>all</u> their constitutional claims by Magistrate Judge Torres **before** the notice of appeal was filed.

As demonstrated below, the record clearly shows that the Parents-Appellants brought their five issues on appeal to the attention of Magistrate Judge Torres and the government's contentions in opposition are meritless.

1. The Parents-Appellants brought to the attention of Magistrate Judge Torres their argument that the family separation issue deprived them from obtaining fair proceedings in violation of due process.

At the pre-trial stage, the Parents-Appellants rejected the plea agreements offered by the government explaining to Magistrate Judge Torres that the element of compulsion, i.e., the separation from their minor children, removed the voluntariness required for purpose of Due Process with respect to guilty pleas.  <u>See</u> Appellants' Brief at 8-9 (citing Dkt. No. 13 at 2, 10-11.)    Likewise, the Parents-Appellants argued that going to trial did <u>not</u> remove "the threat and fear the government applies by keeping the [Parents-Appellants] apart from their minor children [as] a coercive tactic."  <u>See</u> Appellants' Brief at 9 (citing Transcript of Evidentiary Hearing/Motion to Dismiss at 8-9; Dkt. No. 41.).    In looking beyond their pretrial motion to dismiss, the Parents-Appellants also stated:

> So going to trial, to answer your question, it's also a violation of due process. Why? Because we are missing the most important thing, the material witnesses, the children.  They don't have them here.   In fact, they don't even list them in their complaints.   Why?   So even going to trial would be a violation of due

process.

<u>See</u> Transcript of Evidentiary Hearing/Motion to Dismiss at 10; Dkt. No. 41.

At the bench trial, the Parents-Appellants argued to Magistrate Judge Torres that the fact that the key material witnesses, the children, were missing constituted a violation of their due process rights to a fair trial because they could not fairly assert a defense.   <u>See</u> Appellants' Brief at 10 (citing Transcript of Bench Trial/Sentencing at 8-9; Dkt. No. 49.)   They noted that the record shows that they made a "credible fear claim" of persecution or torture from the very beginning.   They told Magistrate Judge Torres that they needed the key material witnesses, their minor children, to establish a duress defense.   <u>Id.</u> at 11.   Specifically the Parents-Appellants stated:

> Judge, my clients left their countries each with a minor child or grandchild escaping horrible violence in their Central American countries.
> As we previously explained at the hearing in our motion to dismiss, key material witnesses, the children, are missing here.   The parties' stipulated exhibits support that claim.   Information as to the whereabouts of these material witnesses was not provided anywhere in the discovery, and these witnesses under the Government's [custody] are exculpatory regarding the Defendants well founded fear for leaving their country and being forced to come here with no alternative to seek safety to avoid the harm.   The fact that these children, the key material witnesses, are missing is a violation of due process rights for a fair trial and of their right against [] self-incrimination.   It forces the defendants to take the stand in order to establish their defense and so there is prejudice.   One constitutional right should not have [to] be surrendered in order to assert another one.

<u>See</u> Transcript of Bench Trial at 8-9 (Dkt. No. 49).   Indeed, under the Constitution, the Parents-Appellants should not have had to surrender their right to a fair and full trial in order to assert their right against self-incrimination.   *Simmons v. United States,* 390 U.S. 377, 394 (1968) ("we find it intolerable that one constitutional right

should have to be surrendered in order to assert another.").

Here, the record shows that the Parents-Appellants made "well-founded fear claims" of persecution and torture as soon as they came into contact with immigration officers.   In fact, the immigration officers recorded this fact in the official immigration forms I-213/I-831.   If available, these children could have corroborated the "credible fear claims" by the Parents-Appellants.   However, the Parents-Appellants, unjustly and unfairly, were not afforded the opportunity to present testimony regarding their claims of duress and well-founded fear.

> 2. The Parents-Appellants brought to the attention of Magistrate Judge Torres their argument that the family separation issue violated their right against self-incrimination.

At the bench trial, the Parents-Appellants specifically stated:

The fact that these children, the key material witnesses, are missing is a violation of due process rights for a trial and of their right against defendants' right against self-incrimination.   It forces them to take the stand in order to establish their defense and there is prejudice.

See Appellants' Brief at 13 (citing Transcript of Bench Trial/Sentencing at 8-9; Dkt. No. 49.)

Incredibly, the government states at pages 31 and 63 of its Response that the Parents-Appellants' claim regarding their right against self-incrimination fails simply because they did not testify.   However, the government conveniently fails to recognize that the Fifth Amendment is implicated when the government implements coercive action that forces a defendant to self-incriminate.   See Appellants' Brief at 13 (citing *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973) and *Gardner v. Broderik,* 392

U.S. 273 (1968)).   Here, the government orchestrated a situation where the Parents-Appellants would have had to testify against themselves at trial.   The separation of the Parents-Appellants from their children— despite the fact that the immigration forms written by government agents state that the minors were the children of the Parents-Appellants— placed the Parents-Appellants in the position to choose to either plead guilty or go to trial and testify against themselves.

The separation of the Parents-Appellants from their children placed a penalty on their self-incrimination privilege.   Such penalty was ultimately *"costly"* because four out of the five Parents-Appellants convicted have already been deported without his or her minor child and nothing indicates they will be reunited anytime in the future.   See Dkt. No. 65; Exhibit X.

    3.   The Parents-Appellants brought to the attention of Magistrate Judge Torres their argument that the family separation issue: (A) violated their due process rights at the pre-trial stage while their misdemeanor charges were pending, (B) violated their due process rights because they were not afforded an opportunity to be heard regarding their asylum claim, and (C) if convicted, would result in a termination of their parental rights for committing a *misdemeanor* offense.

A. The Parents-Appellants noted that the record indicated that they were separated from their minor children shortly after their arrest.   See Appellants' Brief at 15.   The Parents-Appellant noted that they were detained at the El Paso County Jail after being charged with a *misdemeanor* illegal entry, and the whereabouts of their minor children was unknown to them.   Id.   The Parents-Appellants argued to Magistrate Judge Torres that the separation from their children was: (1) a harsh,

extreme punishment in violation of due process, and (2) a prejudicial punishment to both the Parents-Appellants and their children because they were *bona fide asylum seekers*. Id. (citing Dkt. No. 13.)

Magistrate Torres found that the government's provision of only a website to the Parents-Appellants so they could attempt to access information regarding their children was both insufficient and unhelpful. See Appellants' Brief at 17 (citing Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 20-26 and 34-38.)   The Parents-Appellants always maintained that the government inflicted inhumane punishment **prior** to the Parents-Appellants' misdemeanor § 1325 convictions, i.e., *while they were still innocent!*   They always manifested a fear and concern regarding the safety of their children.   The Parents-Appellants' separation from their minor children *before being convicted,* while their petty misdemeanor charges were still pending, stripped them of their parental rights!   Ordinarily, in the United States a person accused of a petty misdemeanor is not punished by depriving him or her of the custody of her or his child for an indefinite time.

Magistrate Torres agreed with the Parents-Appellants that the major problem with these cases was the fact that the government held the minor children in unknown places and under unknown conditions.   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 23-24, 32-36; see also Transcript of Bench Trial/Sentencing; Dkt. No. 49 at 48-49.)   Magistrate Judge Torres stated: "that's an issue that gives me some concern."   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 36.

He agreed from the beginning that the Parents-Appellants' separation from their minor children was a harsh, extreme punishment.  See Transcript of Motion to dismiss Hearing at 34; Dkt. No. 41.[2]

Moreover, the record clearly shows that the Parents-Appellants made a "credible fear claim" of persecution or torture when they were encountered by immigration agents.  The Parents-Appellants argued from the beginning that they should have been referred to asylum proceedings with their minor children, not to a prosecutor for criminal proceedings.  See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 4 and 9.  In fact, at the bench trial, the government stipulated to all of the Parents-Appellants' I-213/I-831 immigration forms.  See Appellants' Brief at 19.  These forms state that when the Parents-Appellants first encountered immigration agents, the Parents-Appellants *expressly* made a "credible fear claim" of persecution if returned to their respective Central American countries.  The law is clear.  An alien arriving in the United States who indicates to the immigration officer that he or she fears persecution or torture if returned to his or her country "shall [be] refer[red[ []] for an interview by an asylum officer" to determine if he or she "has a credible fear of

---

2  The government cites *Malagon de Fuentes v. Gonzales,* 462 F.3d 498, 505-06 (5th Cir. 2006) to justify the unfair punishment of separating the Parents-Appellants from their minor children.  However, the government's reliance on this case is misplaced.  First, in that case, the alien left and attempted to re-enter the country.  Clearly, those are not the facts in this case.  Second, the alien had a prior criminal record.  Clearly, those are not the facts in this case.  And, third, the alien in that case did not make a "credible fear" claim and did not seek asylum.  Clearly, those are not the facts in this case.  The government's reliance on this case is clearly disingenuous.

persecution [or torture]"   *See* 8 U.S.C. § 1225(b)(1)(A)(ii) & (B)(ii); 8 C.F.R. § 208.30(d).

Contrary to the government's contention at pages 31 and 60, the statute does not mandate that referring an alien to an asylum officer can be done only at a port of entry.   No language in the statute supports the government's assertion.   The statute, however, uses the words "shall," and as previously pointed out in the Parents-Appellants' Brief, "the word 'shall' is ordinarily the language of command."   *Alabama v. Bozeman,* 533 U.S. 146, 153 (2001).   Accordingly, the Parents-Appellants should have been referred <u>to an asylum officer</u> for an interview to determine if they had a credible fear of persecution or torture as the statute mandates.   That is what Congress mandates under the statute, and there is no legal binding precedent against such mandate.[3]

The government states the prosecution of the Parents-Appellants does not preclude them from seeking asylum afterwards.   <u>See</u> Government's Response at 60-61.   In other words, the government proposes that this Court ignore the illegal means it employed to obtain the Parents-Appellants' convictions simply because the *wrongfully* convicted Parents-Appellants can still claim asylum in deportation

---

3 The government cites an *unpublished nonbinding district decision from another circuit, United States v. Rojas-Marcano,* No. 18-103 PO, 2018 WL 1033200 (D.N.M. 2018), to justify the government's unfair and arbitrary decision not to comply with Congressional mandate under the asylum statute. However, the government's reliance on this case is misplaced. First, the case does not involve the family separation issue.   And, second, *and most importantly,* the alien did not make a "credible fear claim" before being prosecuted, rather, he stated that he was seeking employment in Seattle, Washington.

proceedings.   That claim actually supports the Parents-Appellants' claim of outrageous conduct.   As the record shows, four of the five Parents-Appellants were deported <u>without</u> their minor children shortly after their convictions.   The government's proposed solution simply "offend[s] even hardened sensibilities." *Rochin v. California,* 342 U.S. 165, 172 (1952).

Furthermore, the Parents-Appellants argued to Magistrate Judge Torres that they were also punished in violation of due process because they could possibly be released on bond if allowed to pursue asylum proceedings.   <u>See</u> Dkt. No. 13 at 6-8 and Transcript of Evidentiary Hearing; Dkt. No. 41 at 6.   As the Parents-Appellants pointed out in their Appellant Brief, the record shows that Parent-Appellant Vasquez-Hernandez was recently given an immigration bond.   <u>See</u> Appellant Brief at 22 (citing Dkt. No. 65; Exhibit X.)

<u>B.</u>   The Parents-Appellants always maintained that the government completely disregarded their claim that they were bona fide asylum seekers and, thus, deprived them of an opportunity to receive a full and fair hearing and a meaningful opportunity to present evidence regarding their asylum claim, all in violation of due process.   <u>See</u> Dkt. No. 13 at 8-10 and Transcript of Evidentiary Hearing; Dkt. No. 41 at 6.   They argued to Magistrate Judge Torres that an asylum hearing would have been dispositive with respect to their § 1325 charges.   <u>Id.</u>   The Parents-Appellants argued to Magistrate Torres that going to trial was simply a mechanism by the government to strip them of their rights of meaningful protection under asylum and

refugee immigration laws.   Id.   They argued that the government was criminalizing their simple act of seeking protection under U.S. asylum law by charging them under § 1325 rather than affording them their due process rights by referring them to an asylum officer as the law mandates.   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 8-9.   Defense counsel argued at the motion to dismiss hearing: "We're arguing in our motion that we shouldn't even be here.   These defendants should be in immigration court."   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 9.

Furthermore, the Parents-Appellants argued that the denial of an opportunity to be heard regarding their asylum claim would likely result in their deportation without their minor children and, thus, a *de facto* termination of their parental rights without due process of law and an opportunity to be heard.   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 8-9.

C. As previously mentioned, the Parents-Appellants argued to Magistrate Judge Torres that with a conviction they would be deported and permanently separated from their children, thus, in effect terminating their parental rights.   The record is replete with instances where the Parents-Appellants argued that in light of a misdemeanor conviction this punishment was inhumane.   They called this punishment **"extreme,"** which is a synonym for *excessive!*   See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 8, 13-14, and 53.)   Magistrate Torres, recognizing the *excessiveness* of this punishment, stated:

> I mean, some of those parents have rights to visitation, basically, until some court of competent jurisdiction or some tribunal of competent jurisdiction makes a determination that they no longer have parental rights.  They have parental rights, even for somebody charged with the most serious crime under the Texas Penal Code.

<u>See</u> Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 34.

After the Magistrate Judge entered his written judgment of guilt and deportation for the Parents-Appellants, the Parents-Appellants filed a *timely* motion to reconsider judgment.  <u>See</u> Dkt. No. 42.  In that motion, the Parents-Appellants argued that their punishment was actually their criminal conviction, not simply the imposition of their sentence of probation.  <u>Id.</u>  They **once again** contended that their deportation would permanently separate them from their children, an extreme and excessive punishment.  <u>Id.</u>  The record here clearly shows that the Parents-Appellants are from Honduras and El Salvador and that they do not speak English (in fact, Ms. Zavala-Zavala could not read or write Spanish).  <u>Id.</u>  They are unsophisticated indigenous people.  Regaining custody of their children would be a formidable task.

The Parents-Appellants extreme and excessive punishment argument due to their *de facto* termination of their parental rights by way of deportation was clearly brought to the attention of Magistrate Judge Torres **long before** the Parents-Appellants filed their notice of appeal.  Naturally, the Parents-Appellants hoped that the Magistrate Judge would reconsider his judgment because he had previously stated that the Parents-Appellants' would *possibly* be deported.  <u>See</u> Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 43.  In fact, four of the five Parents-Appellants have been

deported without their children.  See Dkt. No. 65; Exhibit X.  For those Parents-Appellants, the separation from their children is now permanent, **not** temporary as the government suggests at page 41 of its Response.

The record clearly demonstrates that the Parents-Appellants claimed that their punishment of being permanently separated from their children due to their deportation was both: (1) an unnecessary infliction of pain because it could have been avoided had the government complied with the asylum statue, and (2) extreme and excessive considering that the Parents-Appellants were convicted of only *a petty misdemeanor.*

4. The Parents-Appellants brought to the attention of Magistrate Judge Torres their argument that the family separation issue violated their constitutional rights because the government did not make their minor children available during the proceedings.

At both the evidentiary hearing and bench trial, the Parents-Appellants repeatedly told Magistrate Judge Torres that their children were key material witnesses.   At the motion to dismiss hearing, the Parents-Appellants stated:

So going to trial, to answer your question, it's also a violation of due process. Why? Because we are missing the most important thing, the material witnesses, the children.   [The government] don't have them here.   In fact, [the government] don't even list them in their complaints.   Why?  So going to trial would be a violation of due process.

See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 10.   And, at the bench trial, the Parents-Appellants stated that they could not fairly assert a defense without their children.   See Transcript of Bench Trial/Sentencing; Dkt. No. 49 at 8-9.   They stated that they left their Central American countries with their minor

children to escape the horrible violence. <u>Id.</u> They specifically stated to the Magistrate Judge that information concerning the specific whereabouts of these key material witnesses was not provided in the discovery provided by the government. <u>Id.</u> They stated that these witnesses, under the government's custody, were clearly exculpatory regarding the Parents-Appellants' well-founded fear claim and as to their claim that they left their countries to escape violence and harm. <u>Id.</u> As previously noted, the government merely provided a web site on a page from the Office of Refugee Resettlement (ORR) which the Magistrate Judge, on the record, found unhelpful! Magistrate Judge Torres stated:

> And it--- the sense that I get is that the government's default position is, in the absence of policy, the policy is no information. And there's nothing prohibiting us, but there's no information for the parents while the criminal case is pending. And that's—that gives me a little bit of – I have a little trouble with that, okay?

<u>See</u> Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 24. In fact, the Magistrate Judge directed the parties to brief the issue of whether or not the government was required to provide information to the Parents-Appellants as to the "location and well-being" of their children. See Dkt. No. 3 at 2. However, the government's lawyer responded that he did <u>not</u> have to provide it. The following colloquy took place:

> THE COURT:  And so—and you indicated there's no statutory or regulatory authority that compels the government to provide this—just information, and I—generally, with regard to the well-being or the location of—of the defendant parent's kids, there's no authority that compels the government to do that. Correct?
>
> MR. RENNIE: We did not find any such authority in our research, Your Honor.

17

See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 19. In fact, the government indicated that "these types of pressures related to family concerns or even the government withholding some information is not the type of thing" that is coercive. See Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 18.

The government's claim that the Parents-Appellants were not entitled to have the material witnesses, their children, available for trial because they "did not subpoena them, request that the Government produce them, or make any effort whatsoever to call them as witnesses" *clearly* demonstrates a lack of understanding of *Brady*. See Government's Response at 62. First, under *Brady,* "[a] defendant need not request the favorable and material evidence to trigger the prosecution's duty to disclose." *Johnson v. Dretke,* 394 F.3d 332, 336 (5th Cir. 2004) (citing *Strickler v. Greene,* 527 U.S. 263, 280 (1999) ("We have since [Brady] held that the duty to disclose such evidence is applicable even though there has been no request by the accused and that the duty encompasses impeachment evidence as well as exculpatory evidence.")). Second, the Supreme Court has stated "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs,* 427 U.S. 97, 108 (1976). And, third, "[i]n order to comply with *Brady,* [] 'the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in this case." *Strickler,* 527 U.S. at 280-81. (citations omitted); *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995). This obviously includes the Office Refugee Resettlement (ORR). *Id.*

18

The government never provided information about the children despite Magistrate Judge and defense counsel's inquiries as to their whereabouts. In fact, the Parents-Appellants stated in their motion to dismiss that "the government is holding their children hostage in unknown places and under unknown conditions. This procedure is constitutionally impermissible . . . " See Dkt. No. 13 at 12. The government attempted to escape its duty to comply with *Brady* by simply stating "we do not know" if the minors are the real children of the Parents-Appellants. If the government truly had doubts as to whether the minor children in these cases were indeed the real children of the Parents-Appellants, it could have ordered ORR to perform DNA tests if it had serious doubts about the child-parent relationship between Parents-Appellants and their children. That is exactly what they did in *Ms. L., et al. v. U.S. Immigration and Customs Enforcement, et al.*, 18cv428 DMS MDD (S.D.C. Feb. 2018); Dkt 44 "Notice of DNA Results" and Dkt No. 56-1 at pp. 5-6, a case cited in the Appellants' Brief at page 33. But the government here did not do that. The two logical conclusions for why the government **chose not** do that is because it either did not have doubts as to the minor children's parentage, or because it simply failed to comply with its duty under *Brady* to "learn of any favorable evidence." *Kyles*, 514 U.S. at 437. The Supreme Court has observed: "whether the non-disclosure was a result of negligence or design, it is the responsibility of the prosecutor." *Giglio v. United States*, 405 U.S. 150, 154 (1972).

In the recent California case, like in this case, a parent and her seven-year-old

child were seeking asylum and separated by the government.  See *Ms. L., et at.*, 18cv428 DMS MDD (S.D.C. Feb. 2018); Dkt. No. 1.  In that case, however, the government had the Office of Refugee Resettlement (ORR) conduct a DNA test, which resulted in 99.99999% probability that the parent arrested (under the same circumstances as the Parents-Appellants in this case) was in fact the mother of the minor.  Id. at Dkt. 44 "Notice of DNA Results" at p. 2.  The government must treat all similarly situated defendants alike to ensure that they receive a fair criminal trial. The Parents-Appellants should have been afforded the opportunity to have DNA tests performed <u>if</u> the government truly had doubts as to whether the minor children in these cases were indeed the real children of the Parents-Appellants.  *Strickler,* 527 U.S. at 281. (<u>recognizing</u> "the special role played by the American prosecutor in the search for truth in criminal trials").

Indeed, Parent-Appellant Vasquez-Hernandez recently obtained an immigration bond despite her misdemeanor conviction under § 1325 which would not have been possible if she had been lying about the fact that the minor she was traveling with was her minor son.  <u>See</u> Dkt. No. 65; Exhibit X.

Magistrate Judge Torres correctly determined that these cases involved the minor children of the Parents-Appellants.  And, as noted in the Parents-Appellants' Brief, the government's stipulation to documents stating that the minor children were the children of the Parents-Appellants contradicts the claim that the minors are not the real children of the Parents-Appellants.  The government's stipulation waives that

issue.   The words of the parties manifest their intent or position with respect to a waiver.   *International Ins. Co. v. RSR Corp.,* 426 F.3D 281, 300 (5th Cir. 2005).

The Parents-Appellants argued to the Magistrate Judge that the government consciously kept these key material witnesses hidden, thereby acting in bad faith. See Transcript of Evidentiary Hearing; Dkt. No. 41 at 8-10 and Transcript of Bench Trial and Sentence; Dkt. No. 49 at 8-9.   Contrary to the government's contention, these witnesses were not merely absent (as the government suggests in its Response at page 64), rather, the government hid them!

> 5. The Parents-Appellants brought to the attention of Magistrate Judge Torres their argument that the family separation issue employed by the government to obtain a petty misdemeanor conviction constituted outrageous government conduct.

The Parents-Appellants argued from the beginning that the government's conduct of separating the Parents-Defendants from their children and terminating their parental rights due to the Parents-Appellants' imminent deportation was outrageous conduct.   This claim was not made in passing as the government suggests.   This claim was expressly made and appears throughout the entire record.   The Parents-Appellants argued to the magistrate that they made a "credible fear claim" the minute they encountered immigration officers at the border.   See Bench Trial Stipulated Exhibit 1 (Immigration Forms I-213/I-831); Dkt. No. 47.   They argued that the immigration officers recorded the Parents-Appellants' claim in their official reports (in fact, the parties stipulated to those documents at the bench trial).   Id. The Parents-Appellants claimed that family separation in a *petty misdemeanor* case was

extreme and outrageous!   <u>See</u> Transcript of Evidentiary Hearing; Dkt. No. 41 at 7.

The record is replete with instances where Magistrate Judge Torres agreed that the

family separation was harsh.   Magistrate Judge Torres stated:

> I lament it more than you that I am in a position where I am unable to give you any information or I am not in possession of any information regarding the whereabouts or well being of your children, and I wish that was not so.   I wish I could give you that information because I know you are worried about it.   ***I can see it on your faces, and I can hear it in your voices that you are concerned, and that's probably the single most important thing to you in your lives,*** and any of us who are blessed to be parents understand that is the single most important thing we have in our lives.   ***I wish I could give you that information, believe me, and I hope you understand that.***

<u>See</u> Transcript of Bench Trial and Sentence; Dkt. No. 49 at 48-49. (emphasis added).

The Parents-Appellants argued that "[t]he government's conduct of arresting and

prosecuting the parents-defendants violates fundamental fairness and

universal/humane sense of justice," thus it was outrageous.   <u>See</u> Motion to Dismiss;

Dkt. No. 13 at 14 and Transcript of Motion to dismiss Hearing; Dkt. No. 41 at 7, 13,

and 52.   The Parents-Appellants always contended that the government deliberately

and arbitrarily deprived them from the protections of asylum law for the sole purpose

of obtaining *a petty misdemeanor conviction*.   <u>Id</u>.   They always manifested to

Magistrate Judge Torres that facing deportation without their minor children would

permanently terminate their parental rights.   <u>Id.</u>   In fact, the record clearly shows

that Magistrate Judge Torres was frustrated with the problems of the family

separation issue and the fact that termination of parental rights is a serious issue

implicated in these cases.   <u>See</u> Transcript of Motion to dismiss Hearing; Dkt. No. 41

at 32-36.

Moreover, the record is replete with the Parents-Appellants' complaints that the government employed illegal means and tactics that violated basic principles of fairness under the due process clause of the Fifth Amendment solely to obtain their petty misdemeanor convictions.   Such claims are the basis for an outrageous government conduct claim.   *See United States v. Posada,* 541 F.3d 344, 353 (5th Cir. 2008).

The government's *unfair and calculated* claim that "we do not know" whether the minors involved are the real children of the Parents-Appellants and intentionally ignoring the Parents-Appellants constitutional protections, simply amounts to unethical and outrageous government conduct.   *See Berger v. United States,* 295 U.S. 78, 88 (1935) and *United States v. Corona,* 551 F.2d 1386, 1390 (5th Cir. 1977).

In short, the record clearly demonstrates that *none* of the five arguments mentioned above are new.   All of the arguments were brought to the attention of Magistrate Judge Torres ***long before*** the Parents-Appellants filed their notice of appeal.   Thus, plain error review is <u>not</u> the correct standard of review.   The Parents-Appellants sought a fair and accurate determination of this issue from the Magistrate Judge ***long before*** they filed their notice of appeal.   *See United States v. Frady*, 456 U.S. 152, 163 (1982) ("The [Plain Error] Rule reflects . . . [the] need to encourage all trial participants to seek a fair and accurate trial the first time around [before appeal].") (citing *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)).

CONCLUSION

The Parents-Appellants' conviction and sentence must be reversed.

Very truly yours,

MAUREEN FRANCO
Federal Public Defender

/s/

SERGIO GARCIA
Assistant Federal Public Defender
Western District of Texas
700 E. San Antonio, D-401
El Paso, Texas   79901
(915) 534-6525
*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/

_____
Sergio Garcia
Attorney for Defendant